IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HB PRODUCTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) Case No.: 19-cv-6366 |
| | ) |
| v. | ) |
| | ) Judge John Robert Blakey |
| DOES 1-21, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

**I. Introduction**

This copyright suit relates to the ongoing copyright infringement under the copyright laws of the United States (17 U.S.C. § 101 *et seq*.). In particular, this action seeks to address the infringement of Plaintiff's copyrighted mainstream motion picture entitled *Hellboy,* an action, adventure, fantasy movie directed by Neil Marshall, and starring David Harbour, Milla Jovovich and Ian McShane, among others. The Motion Picture has significant value and has been created and produced at considerable expense.

The illegal downloading of mainstream movies to avoid purchasing a theater ticket, buying a DVD or paying a rental fee is so pervasive that certain segments of the public appear to consider it acceptable. There are even websites devoted to illegal copying. One such website is *The Pirate Bay* which includes instructions on how to download the required pirating software, usually a torrent.[1]  *The Pirate Bay* even provides a convenient "Pirate Search" function that enables infringers to "shop" for illegal copies of games, music, movies, books and software. This brazen and widely accepted scheme for illegal copying, which clearly is an intentional act since it requires an infringer to install special software and search out movies to pirate, is the problem addressed by this lawsuit.

Cloaked in the anonymity of the Internet, digital pirates banded together into swarms using file-sharing technology such as BitTorrent to illegally obtain and distribute high quality copies of the Motion Picture. While each single act of infringement may appear to be slight, collectively,

---

[1] THE PIRATE BAY, https://thepiratebay.org/ (last visited July 11, 2017) ("How do I download?").

1

illegal downloading often starts even before a movie is released and costs legitimate industries millions of dollars. Not only are movies pilfered, the pirates' other prizes include TV shows, computer games, e-books, software and music.

Thus, this suit not only represents a single copyright owner faced with the daunting task of protecting its property from the irreparable harm caused by thousands of swarming infringers, it is emblematic of the fight of the motion picture industry and other legitimate creative businesses that rely on copyright protection. Denying Plaintiff the discovery needed to pursue the infringing swarm in a single action endorses and encourages the ongoing infringement. It frees the pirates to roam the Internet searching for prizes by providing shelter through the anonymity of the Internet and the high cost of individual enforcement.

Plaintiff sued each Defendant as a "Doe" because Defendants committed infringement using on-line pseudonyms ("user names" or "network names"), not their true names. Plaintiff has only been able to identify the Doe Defendants by (1) their Internet Protocol ("IP") addresses, (2) the dates and times of the infringement, (3) the hash value which identifies each Defendant as participating in the same swarm and (4) the location of each IP address within Illinois.

Defendants' actual names can only be obtained from the non-party Internet Service Providers ("ISPs") to which Defendants subscribe and from which Defendants obtain Internet access, as this information is readily available to the ISPs from records kept in the regular course of business. Accordingly, Plaintiff seeks leave of Court to serve limited discovery prior to a Rule 26(f) conference on the non-party ISPs solely to determine the true identities of the Doe Defendants. Plaintiff requests that the Court enter an order allowing Plaintiff to serve Rule 45 subpoenas on the ISPs immediately and that the ISPs comply with the subpoenas.

The Mandatory Initial Discovery Pilot Project (MIDP) supersedes Rule 26(a)(1), and does not generally affect the grounds for or relief sought in this Motion. See Standing Order in MIDP Cases, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, http://www.ilnd.uscourts.gov/Pages.aspx?jYyawIFLXKMJrmXzxFk8lw== ("MIDP Standing Order"). Plaintiff is aware of and will of course follow the Northern District of Illinois's MIDP requirements, which are triggered by a responsive pleading. See MIDP Standing Order 3, § A(4) ("A party seeking affirmative relief must serve its responses to the mandatory initial discovery no later than 30 days after the first pleading filed in response to its complaint . . ."). Yet Plaintiff must first identify the Doe Defendants before a responsive pleading is possible.

Rule 26(d)(1) provides that a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). The Rule 26(f) conference triggers the time for parties to provide Rule 26(a) disclosures. Fed. R. Civ. P. 26(a)(1)(C). Likewise, the MIDP Standing Order provides that the "parties to this litigation are ordered to provide mandatory initial discovery responses as set forth in Section B before initiating any further discovery in this case." MIDP Standing Order 1, § A(1). However, under the MIDP Standing Order, a responsive pleading starts the clock on the MIDP disclosures, MIDP Standing Order 3, § A(4), not the Rule 26(f) conference. To the extent that the MIDP Standing Order imposes limitations on discovery separate from and in addition to the timing restrictions of Rule 26(d)(1), Plaintiff requests that the Court grant leave to conduct discovery prior to the Rule 26(f) conference and prior to the MIDP disclosures.[2]

If the Court grants this Motion, Plaintiff will serve subpoenas on the ISPs requesting limited identifying information (name and current address only). If the ISPs cannot themselves identify one or more of the Doe Defendants but can identify an intermediary ISP as the entity providing online services and/or network access to such Defendants, Plaintiff will then serve a subpoena on that ISP requesting the identifying information for the relevant Doe Defendants. In either case, these ISPs will be able to notify their subscribers that this information is being sought, and, if so notified, each Defendant will have the opportunity to raise any objections before this Court. Thus, to the extent that any Defendant wishes to object, he or she will be able to do so.

## II. ARGUMENT

Pursuant to Rule 26(d)(1), except for circumstances not applicable here, a party may not propound discovery in advance of a Rule 26(f) conference absent a court order. Rule 26(b) provides courts with the authority to issue such an order: "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where: (1) plaintiff makes a prima facie showing of a claim of copyright infringement, (2) plaintiff submits a specific discovery request, (3) there is an absence of alternative means to obtain the subpoenaed information, (4)

---

[2] Indeed, Plaintiff would be unable to comply with the MIDP Standing Order's requirements (which in any event are not yet triggered) until Plaintiff has the identifying information it hereby requests.

there is a central need for the subpoenaed information, and (5) defendants have a minimal expectation of privacy. See Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010) (citing to Sony Music Entm't v. Does 1-40, 326 F.Supp.2d 556, 564-65 (S.D.N.Y. 2004)); BMG Music v. Doe #4, No. 08-cv-135, 2009 WL 2244108, at *3 (M.D.N.C. July 24, 2009); Elektra Entm't Group, Inc. v. Doe, No. 08-cv-115, 2008 WL 5111886, at *4 (E.D.N.C. Dec. 4, 2008); Warner Bros. Records, Inc. v. Doe, No. 08-cv-116, 2008 WL 5111883, at *4 (E.D.N.C. Dec 4, 2008); see also Arista Records LLC v. Does 1-19, 551 F.Supp.2d 1, 6-7 (D.D.C. 2008) (noting that in the "overwhelming" number of cases where copyright infringement plaintiffs sought to identify "Doe" defendants, courts "routinely applied" the good cause standard to permit discovery). Here, all of the good cause elements are present. Thus, Plaintiff respectfully submits that this Court should grant the Motion.

### A. Precedent Allowing Discovery to Identify Doe Defendants

In copyright cases brought by motion picture studios and record companies against Doe defendants, this Court and other courts have granted motions for leave to take expedited discovery to serve subpoenas on ISPs to obtain the identities of Doe Defendants prior to a Rule 26 conference. Warner Bros. Records, Inc. v. Does 1-6, 527 F.Supp.2d 1, 2 (D.D.C. 2007) (allowing plaintiffs to serve a Rule 45 subpoena upon Georgetown University to obtain the true identity of each Doe defendant, including each defendant's true name, current and permanent addresses and telephone numbers, email address, and Media Access Control ("MAC") address) (citing Memorandum Opinion and Order, UMG Recordings, Inc. v. Does 1-199, No. 04-093(CKK) (D.D.C. March 10, 2004); Order, UMG Recordings v. Does 1-4, 64 Fed. R. Serv. 3d (Callaghan) 305 (N.D. Cal. March 6, 2006)).

In fact, for the past few years, federal district courts throughout the country, including Courts in the Northern District of Illinois, have granted expedited discovery in Doe Defendant lawsuits that are factually similar to the present lawsuit.[3] In these cited cases and others like them,

---

[3] Representative cases include Countryman Nevada, LLC v. Does 1-46, No. 14-cv-1381, 2014 WL 4947587 (N.D. Ill. Sept. 30, 2014) (Darrah, J.); SITE B v. Does 1-51, No. 13-cv-5295, 2014 WL 902688 (N.D. Ill. Mar. 7, 2014) (Leinenweber, J.); TCYK, LLC v. Does 1-44, No. 13-cv-3825, 2014 WL 656786 (N.D. Ill. Feb. 20, 2014) (Dow, J.); Bicycle Peddler, LLC v. Does 1-99, No. 13-cv-2375, 2013 WL 4080196 (N.D. Ill. Aug. 13, 2013) (Gottschall, J.); reFX Audio Software, Inc. v. Does 1-111, No. 13-cv-1795, 2013 WL 3867656 (N.D. Ill. July 23, 2013) (Gettleman, J.); TCYK, LLC v. Does 1-87, No. 13-cv-3845, 2013 WL 3465186 (N.D. Ill. July 10, 2013) (Tharp, J.); Bicycle Peddler, LLC v. Does 1-12, 295 F.R.D. 274, 276 (N.D. Ill. 2013) (Tharp, J.); Pacific Century Int'l v. Does 1-25, No. 12-cv-1535 (N.D. Ill. June 28, 2012) (Bucklo, J.); Hard Drive Productions

copyright holder plaintiffs have obtained the identities of P2P network users from ISPs through expedited discovery using information similar to that gathered by Plaintiff in the present case, and they have used that information as the basis for their proposed subpoenas to these ISPs. In this case, Plaintiff is only seeking the name and current address of each Doe Defendant.

The following factors are considered when granting motions for expedited discovery to identify anonymous Internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe Defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss. Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); see also Rocker Mgmt. LLC v. John Does, No. 03-MC-33, 2003 WL 22149380, at *1-2, (N.D. Cal. 2003).

### B. Good Cause Exists to Grant the Motion

#### 1. Plaintiff has a Prima Facie Claim for Copyright Infringement

##### a. Overview of Allegations and Factual Showings

The Complaint alleges that the Doe Defendants, without authorization, used an online media distribution system to download the copyrighted Motion Picture and distribute it to other users on the P2P network, including by making available for distribution to others the copyrighted Motion Picture for which Plaintiff holds the exclusive reproduction and distribution rights. Compl. ¶¶ 12-16. Maverickeye UG ("MEU"), a provider of online anti-piracy services for the motion picture industry, was engaged to monitor this infringing activity. Declaration of Daniel Arheidt (attached as Exhibit A).

An IP address is a unique numerical identifier that is automatically assigned to an Internet user by the user's Internet Service Provider ("ISP"). In logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and other related information of the user/subscriber. Arheidt Decl. ¶ 17.

Only the ISP to which a particular IP address has been assigned for use by its subscribers

---

v. Does 1-48, No. 11-cv-9062, 2012 WL 2196038 (N.D. Ill. June 14, 2012) (Kim, J.); Pacific Century Int'l v. Does 1-31, No. 11-cv-9064, 2012 WL 2129003 (N.D. Ill. June 12, 2012) (Leinenweber, J.); First Time Videos, LLC v. Does 1-76, 276 F.R.D. 254, 255 (N.D. Ill. 2011) (Bucklo, J.).

can correlate that IP address to a particular subscriber. From time to time, a subscriber of Internet services may be assigned different IP addresses from their ISP. Thus, to correlate a subscriber with an IP address, the ISP also needs to know the exact date and time the IP address was being used. Id. at ¶ 18. Unfortunately, many ISPs only retain for a very limited amount of time the information necessary to correlate an IP address to a particular subscriber.

To identify the IP addresses of those BitTorrent users who were copying and distributing Plaintiff's copyrighted Motion Picture, Daniel Arheidt, a software consultant with MEU, was responsible for analyzing, reviewing and attesting to the results of the investigation.

MEU used forensic software to scan BitTorrent networks for the presence of infringing transactions, Id. at ¶ 23, and Arheidt reviewed the evidence log containing the transactions and the IP addresses of the users responsible for copying and distributing the Motion Picture. Id. at ¶ 24. Through each of the transactions, the computers using the IP addresses identified in Exhibit B of the Complaint transmitted a copy or a part of a copy of a digital media file identified by the relevant hash value. The IP addresses, hash values, dates and times contained in Complaint Exhibit B correctly reflect what is contained in the evidence logs. The subscribers using the IP addresses set forth in Complaint Exhibit B were all part of a "swarm" of users that were reproducing, distributing, displaying or performing the copyrighted work. Id. at ¶ 25.

Moreover, the users were sharing the exact same copy of the Motion Picture. Id. at ¶ 26. Any digital copy of an audiovisual work may be uniquely identified by a unique, coded, string of characters called a "Cryptographic Hash Value." Id. This concept was developed by the United States National Security Agency. Id. The hash value is a string of alphanumeric characters generated by a mathematical algorithm known as US Secure Hash Algorithm 1 or "SHA-1." Id. Using a hash to identify different copies of the Motion Picture, it was determined that these users reproduced the very same copy of the Motion Picture. Id.

The MEU software analyzed each BitTorrent "piece" distributed by each IP address listed in Complaint Exhibit B and verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital motion picture. Id. at ¶ 27.

Each transaction was recorded in a PCAP, which stands for "packet capture" and is a forensically sound interface for recording network traffic. Id. at 28. The time recorded is quoted in Universal Time which correlates to the assignment logs kept by ISPs tracking which IP address is assigned to which customer at a given point in time. Id.

The software uses a geolocation functionality to confirm that all IP addresses of the users set forth in Complaint Exhibit B were located in Illinois. Id. at ¶ 29. Although an IP address alone does not reveal the name or contact information of the account holder, it does reveal the locations of the Internet connection used for the transaction. Id. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. Id. These registries assign blocks of IP addresses to ISPs by geographic region. Id. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly-available and searchable format. Id. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial databases by ISPs. Id.

MEU utilizes technology which ensures that a defendant's IP address is correctly recorded at the exact time of infringement and is always accurate. Id. at 29. MEU provided Plaintiff with the Doe Defendants' IP addresses, hit date of infringement and the correlating hash values for each infringement. Id. MEU's system automatically references each IP address present within the above mentioned forensic data against Maxmind® IP geolocation database. Id. As an example of how the process works, www.maxmind.com/en/geoip_demo provides a way for anyone to test the database which MEU uses. Id. Maxmind® IP geolocation data uses geolocation technology which has consistently worked in similar cases to ensure that an IP address traced to a physical address is located within a particular District. Id. Maxmind® IP geolocation database is not "software" or technology per se, rather, it is a database/list. Id.

As set forth in Complaint Exhibit B, it was confirmed not only that the users distributed the files in Illinois, but also the specific location where the distribution took place.

The targeted period of the swarm in this matter covers a one day period on July 3, 2019. Torrent swarms can survive over extended periods of time (months or years) and provide users with exactly the same file comprising exactly the same pieces. A primary factor determining the size of a swarm is the popularity of the product that the file contains (movie, audio, TV series, etc.). For example, a recently released movie can lose popularity within weeks or months, whereas a famous album of a rock band might continue to be popular for several years.

It is not necessary for each of the Defendants to have directly interacted with each other Defendant, or to have shared a piece of the file with each and every Defendant when downloading the movie. The Defendants are properly joined because their actions directly

relate back to the same initial seed of the swarm, and their alleged infringement further advanced the series of infringements that began with the initial seed and continued through other infringers. In doing so, the Defendants all acted under the same system. It is sufficient that the Defendants shared pieces that originated from the same (identical) file, and opened their computer to allow others to connect and receive those pieces. See, e.g., Patrick Collins, Inc. v. John Does 1-21, 11-cv-15232, 2012 WL 1190840, at *7-8 (E.D. Mich. Apr. 5, 2012) (attached as Exhibit B).

The question of whether defendants' actions in a swarm justified joinder under Rule 20 arose in TCYK, LLC v. Does 1-44, 13-cv-3825, 2014 WL 656786 (N.D. Ill. Feb. 20, 2014) (Dow, J.) (attached as Exhibit C). In a well-reasoned opinion, not only did the District Court conclude that they did, but also noted that this viewpoint is starting to be adopted widely in the Northern District of Illinois.

> The Court acknowledges the strong arguments on both sides of the issue, but agrees with the weight of the authority and growing trend in this district that participation in a swarm qualifies as engaging in a "series of transactions or occurrences" for the purpose of Rule 20. As other judges in this district have concluded, a user who connects to a swarm joins a "cooperative endeavor." *TCYK, LLC,* 2013 WL 3465186 at *1. Regardless of whether these forty-four defendants contemporaneously participated in the swarm, shared bits of the seed file with each other, or even shared bits of the file at all, each joined the swarm knowing that his participation increased the swarm's ability to disseminate a common seed file quickly and efficiently. The Court therefore concludes that a logical relationship exists among the actions of the Defendants such that joinder is proper. Moreover, joinder here serves the interest of judicial economy, which underlies Rule 20. Wright *et al., supra,* § 1653. "At the pleading stage, it is more efficient to join Doe Defendants in one action than to require separate lawsuits. Individual litigations, at least at the early stages of litigation, would be needlessly expensive for both [Plaintiff] and the courts and would frustrate the judicial efficiency policies at the heart of Rule 20." *Malibu Media,* 291 F.R.D. at 204-05.

TCYK, LLC, 2014 WL 656786, at *3.

While not binding on this Court, TCYK, LLC stands as persuasive authority for the view that the cooperative and interdependent actions of defendants participating in a swarm constitute the requisite "series of transactions or occurences" under Rule 20 to justify joining them in common litigation involving the downloading of the motion picture at issue.

      b.   **Plaintiff's Prima Facie Showing of Copyright Infringement**

Plaintiff has sufficiently identified the Doe Defendants through the unique IP address that each Doe Defendant was assigned at the time of the unauthorized distribution and copying of the copyrighted Motion Picture. These Defendants gained access to the Internet through their respective ISPs (under cover of an IP address) only by setting up an account with the various ISPs. The ISPs can identify each Defendant by name through the IP address by reviewing its subscriber activity logs. Thus, Plaintiff can show that all Defendants are "real persons" whose names are known to the ISP and who can be sued in federal court.

A prima facie claim of copyright infringement consists of two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. Feist Publ'ns. Inc. v. Rural Tele. Serv. Co., Inc., 499 U.S. 340, 361 (1991). Plaintiff satisfied the first good cause factor by properly pleading a cause of action for copyright infringement. Compl. ¶¶ 12-16; see also In re Aimster Copyright Litig., 334 F.3d 643, 645 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright . . ."); Elektra, 2008 WL 5111886, at *4 ("[P]laintiffs have established a prima facie claim for copyright infringement, as they have sufficiently alleged both ownership of a valid copyright and encroachment upon at least one of the exclusive rights afforded by copyright."); Warner Bros. Records, Inc. v. Doe, No. 08-cv-116, 2008 WL 5111883, at *4 (E.D.N.C. Dec. 4, 2008) (same). Accordingly, Plaintiff has met and exceeded its obligation to plead a prima facie case.

### 2. Plaintiff Seeks Limited and Specific Discovery

Plaintiff only seeks to discover the name and current address of each Defendant. This is all specific information that is in the possession of each Defendant's ISP that will enable Plaintiff to serve process. Since the requested discovery is limited and specific, Plaintiff has satisfied the second good cause factor.

### 3. No Alternative Means Exist to Obtain Defendant's True Identities

Other than receiving the information from the Defendants' ISP, there is no way to obtain Defendants' true identity because the ISP is the only party who possesses records which track IP address assignment to their subscribers. Consequently, the ISP is the source for information

relating to associating an IP address to a real person. Since there is no other way for Plaintiff to obtain Defendant's identity, except by serving a subpoena on Defendant's ISPs demanding it, Plaintiff has established the third good cause factor. See Columbia, 185 F.R.D. at 578-80; Elektra, 2008 WL 5111886, at *4 (finding that the feasibility of a suggested alternative method of determining defendants' identities by hiring a private investigator to observe downloading "is questionable at best"); Warner Bros., 2008 WL 5111883, at *4 (same).

### 4. Discovery is Needed to Advance the Asserted Claims

Plaintiff will not be able to serve the Defendants with process and proceed with this case without the requested discovery. Plaintiff's statutorily protected property rights, in which millions have been invested, are at issue in this suit and, therefore, the equities should weigh heavily in favor of preserving Plaintiff's rights. Since identifying the Defendant by name is necessary for Plaintiff to advance the asserted claims, Plaintiff has established the fourth good cause factor. See BMG Music, 2009 WL 2244108, at *3 (finding under nearly identical circumstances that "[p]laintiffs have shown that the subpoenaed information - Doe #4's identity – is centrally needed to advance Plaintiff's copyright infringement claim"); Sony, 326 F.Supp at 566.

### 5. Plaintiff's Interest in Knowing Defendants' True Identities Outweighs Defendants' Interests in Remaining Anonymous

Plaintiff has a strong legitimate interest in protecting its copyright. Defendants are copyright infringers with no legitimate expectation of privacy in the subscriber information provided to the ISP, much less in distributing the copyrighted work in question without permission. See Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person – the system operator"); BMG Music, 2009 WL 2244108, at *3 (finding under nearly identical circumstances that "[p]laintiffs have shown that Defendant Doe #4 has a minimal expectation of privacy downloading and distributing copyrighted songs without permission"); Interscope Records v. Does 1-14, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the Internet to distribute or download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment); Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 8-9 (D.D.C. Apr. 28, 2008) (finding that the "speech" at issue was the

doe defendant's alleged infringement of copyrights and that "courts have routinely held that a defendant's First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights"); Arista Records, LLC v. Doe No. 1, 254 F.R.D. 480, 481 (E.D.N.C. 2008); Sony, 326 F.Supp.2d at 566 ("defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission"); U.S. v. Hambrick, 55 F.Supp.2d 504, 508 (W.D. Va. 1999), aff'd, 225 F.3d 656 (4th Cir. 2000).

Downloading a mainstream motion picture is no different than downloading a song. Being named as a defendant in this action does not expose an individual to embarrassment. It is not blackmail. In fact, copying music and mainstream movies is so pervasive that certain segments of the public apparently accept it without question. This is the specific problem this lawsuit addresses – copying a mainstream movie is no different than downloading a song, it raises no privacy concerns.

      **C.**     **Irreparable Harm Establishes Good Cause to Grant the Motion**

Good cause exists here for the additional reason that a claim for copyright infringement presumes irreparable harm to the copyright owner. This is especially true in this matter since the copying results in lost ticket sales, and will also erode rentals and purchases. See Elvis Presley Enter., Inc. v. Passport Video, 349 F.3d 622, 631 (9th Cir. 2003); UMG Recordings, Inc. v. Doe, 2008 WL 4104214 (N.D. Cal. 2008) (finding good cause for expedited discovery exists in Internet infringement causes, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference); see also Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 14.06[A], at 14-03 (2003).

The first and necessary step that Plaintiff must take to stop the infringement of its valuable copyright is to identify the Doe Defendants who are copying and distributing the Motion Picture. This lawsuit cannot proceed without the limited discovery Plaintiff seeks because the ISPs are the only entities that can identify the otherwise anonymous Defendants. Courts regularly permit early discovery where such discovery "will substantially contribute to moving this case forward." Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 277 (N.D. Cal. 2002).

**III.**    **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests the Court to grant the pending Motion for Leave to Take Discovery Prior to the Rule 26 Conference. Plaintiff requests permission to serve a Rule 45 subpoena on the ISPs it has identified as of this date, and those it identifies in the future, so that the ISPs can disclose the name and current address of each Doe Defendant that Plaintiff has identified to date, and an order that the ISPs shall comply with the subpoenas. To the extent that any ISP, in turn, identifies a different entity as the ISP providing network access and online services to the Doe Defendants, Plaintiff also seeks leave to serve, on any such later identified ISP, limited discovery sufficient to identify the Doe Defendant prior to the Rule 26 conference.

Plaintiff will only use this information to prosecute its claims. Without this information, Plaintiff cannot pursue its lawsuit to protect its Motion Picture from past and ongoing, repeated infringement.

Respectfully submitted,

Dated: October 2, 2019

HB PRODUCTIONS, INC.

By: s/Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
(312) 580-1994 Facsimile

Attorneys for Plaintiff
HB Productions, Inc.

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that a true and correct copy of the foregoing Memorandum in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) conference was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on October 2, 2019.

                                                                   _s/Michael A. Hierl_